*Monroe* for plaintiff: *Owsley & Goodloe* for defendants.

PRENTICE & JOHNSON *vs* BUXTON'S AD'R.

Sheriff filed his bill against his deputy and surety in a bond of indemnity, alledging its loss—deputy answers, exhibiting the bond, and alledging a settlement—complainant in amended bill denies settlement, and exhibits evidences of payments which defendant should have made; the finding and exhibiting the bond presents no bar to relief.

---

# Prentice & Johnson *vs* Buxton's Administrator, and Buxton's Administrator *vs* Prentice & Johnson.

CHANCERY.

## ERROR TO THE LOUISVILLE CHANCERY COURT.

*Contracts. Diligence of agents.*

Case 13.

JUDGE MARSHALL delivered the opinion of the Court.

*September 13.*

ON the 18th day of November, 1833, up to which day Prentice & Buxton had been partners in the printing establishment of the "Journal and Focus," in Louisville, Buxton sold to John N. Johnson one half of said Journal and Focus, together with one half of the types, materials, furniture, fixtures, and stock on hand, with a moi-

PRENTICE &
JOHNSON
*vs*
BUXTON'S AD'R.

ety of the leasehold interest in the premises then occupied as the office of the "Journal and Focus," for $3,000, of which $1.800 were paid in hand, $200 in four months, and $1,000 were to be paid in one and two years, and for securing that payment, Johnson & Prentice executed two notes of $500 each. At the same time Buxton sold the excess of his interest in the establishment, above one half, to his former partner, Prentice, at the price of $1,000, for which Prentice & Johnson executed two notes of $500 each, payable in one and two years. By the instrument of sale, which was signed by all the above named parties, it was agreed that the debts due or to become due to the late firm of Prentice & Buxton, should be collected under the control and direction of Prentice & Johnson, and appropriated by them in payment of the debts due by said late firm, and remaining unpaid at the time of the sale; and Johnson agreed to be responsible to the creditors of said late firm, for any amount of its demands collected or caused to be collected by him, which might not be paid over to its creditors, but was to be no further responsible for the debts due by it. If the debts due to said firm should be more than sufficient to discharge those due by it, the surplus was to be equally divided between Prentice & Johnson. If they should fall short, and Prentice should, thereby, become liable for more than his proportion, the payment of his notes was to be suspended until his liability should be ascertained. The debts due to the late firm were not to be set-off against the individual debts of Prentice & Buxton, unless (as provided by a codicil to the agreement,) such individual debts were contracted for the benefit of the firm, or for necessaries for the individual partners. Prentice & Johnson agreed to provide a competent and trust-worthy clerk, who should open an account, in which Prentice & Buxton were to be credited by all sums received for dues to them, and charged with all disbursements for payment of their debts by Prentice & Johnson. And Buxton undertook that his interest in the establishment was free from lien or incumbrance. In March, 1836, Buxton having in the mean time departed this life, his administrator filed this bill, setting forth the sale and

agreement above stated, alledging that Buxton had loaned or advanced, in payment of the debts of Prentice & Buxton, the sum of $900, as mentioned in the agreement, and also $250 in addition, of which there had been no re-payment; that Prentice & Johnson had failed to provide a competent and faithful clerk, and to keep correctly the account provided for, and to proceed diligently in the collection of the debts due to Prentice & Buxton; that said debts greatly exceeded those due by said firm, and that Prentice & Johnson had collected, or should have collected an amount of the former more than sufficient to pay the latter, but averring that they had not collected, or could not collect enough to reimburse them for payments made by them in discharge of debts due from Prentice & Buxton, they had failed and refused, on that pretext, to pay the said four notes of $500 each, two of which had been assigned; and he prays that an account may be taken, and that the advances made by Buxton, or so much as is due therefor, be decreed against the defendants.

Johnson & Prentice answered separately, denying the alledged advances, except as to the sum of $575, which they say was more than reimbursed, and denying, also, the other material allegations of the bill. They alledge that they had paid for the firm of Prentice & Buxton, a greater sum by $— than they had collected or could collect; that Buxton, before the sale, had kept the books unfaithfully, and they did not show truly, the debts and credits of the firm; that he had received large amounts not entered on the books, nor appropriated to the benefit of the firm, and left charges without credits, when payments had been made; that he had, moreover, as an inducement to the purchase by them, represented a considerable excess in the debts due to the firm, above those due by it, which had turned out to be untrue. And that, after the sale, he had received funds of the firm, and especially notes and accounts to a large amount, for which he had not accounted. On these grounds large sums are claimed to be chargeable against him. And Prentice, by cross bill, prayed for and obtained an injunction against the

PRENTICE &
JOHNSON
vs
BUXTON'S AD'R.

collection of the notes given for the interest purchased by him.

By an interlocutory decree, the case was referred to the Master, with minute directions as to the facts to be ascertained and the principles on which the accounts should be stated. And a most voluminous and detailed report having been made, the exceptions to which, taken by Prentice & Johnson, were overruled.

The chancellor's decree.

The Chancellor, on final hearing, being of opinion that on the account growing out of advances made by Buxton, for the benefit of the firm of Prentice & Buxton after the sale, and of receipts by him during the same period, of the funds of the said firm, there was a just balance against him of $57 50, perpetuated the injunction on Prentice's cross bill for that sum, dissolving it for the residue, and dismissed the original bill, decreeing that the complainant should pay the costs of both bills, including $456 allowed to the Master for stating and reporting the accounts. Prentice & Johnson appealed from this decree, and Buxton's administrator has filed cross errors in this Court.

We deem it unnecessary to notice, in detail, the numerous questions made by the errors assigned on each side, and by the exceptions taken to the Master's report by Prentice and Johnson. These questions are, for the most part, subordinate, and such as either need not be decided at all, or will be substantially disposed of under the general view which we shall take of the rights and duties of the parties under the agreement of the 18th of November, and of the account of debts due to and from the firm of Prentice and Buxton.

Purchaser of a printing establishment & subscription and patronage, assuming debts and undertaking the collection of the dues to the establishment, and to pay surplus to vendor, is bound to use reasonable dilligence in making collections

By the agreement referred to, Prentice and Johnson undertook the collection of the debts due to Prentice and Buxton, and to keep a faithful account of their collections and disbursements for that firm. They were entrusted with the books and other evidences of debt in favor of the dissolved firm. They were bound to use good faith and reasonable diligence in making collections and disbursements, and making a true account thereof, and in making such entries on the books as would show any alteration in the state of the debits and credits occasioned

by their acts.   A proper discharge of these duties would have enabled them easily to show the true state of the whole matter—how much they had paid, how much they had collected and from whom—what demands they had failed to collect, though proper means had been used— what demands were in the course of collection, and what were not worth an effort.   They would thus have furnished the means of ascertaining, with sufficient certainty and without unreasonable cost or trouble, what portion of the debts due to Prentice and Buxton should be regarded as available in their hands for discharging the liabilities of that firm.   If the debts due to that firm, and collectable by reasonable diligence, exceeded the amount of the debts due by it, Prentice and Johnson, who undertook to collect the first and apply the collections to the latter debts, cannot charge Buxton for any deficiency in the collection, unless occasioned, in some manner, by his intervention.   And not only is the failure to collect such debts as they might and ought to have collected, chargeable to themselves, but the burthen of proving that any particular debts, or any amount of debts appearing to be due to Prentice and Buxton, were not in fact collectable, devolved on them.   And although it might not be required that in making such proof, they should show that in every case, they had used all or any of the means of coercion furnished by the law, we are of opinion that the mere general statement of two or three witnesses, that they had used great exertion to make collections, which amounts to no more than the opinion of the witnesses, without the facts, is wholly insufficient, and especially when their accounts fail, to a very great extent, to show what debts have been paid and what debts remain uncollected.

By the codicil to the agreement, the individual debts of Prentice and Buxton, of the character therein designated, are allowed to be set-off against debts due to the firm. Of course to the extent that such debts are thus settled, the right of Prentice and Johnson to the surplus of the firm demands, is postponed—and if the collectable debts of the firm were sufficient to discharge these individual debts as well as the debts standing formally against it, Prentice and Johnson have no more right to claim re-

PRENTICE &
JOHNSON
vs
BUXTON'S AD'R.
and disbursm'ts,
and proof that
any of the sums
due to the estab-
lishment    were
lost by insolven-
cy, &c., devolves
on the purchaser.

payment from Buxton for such a debt of his, thus settled by them, than they have to set up against him a proper debt of the firm. Moreover, the individual debts of Buxton (or Prentice,) actually contracted for the use and benefit of the firm, were in effect, debts of the firm, such debts ought to have been paid by the firm, and were probably intended by the codicil, to be put on the same footing on which, by the body of the agreement, the other debts of the firm were placed. And even with regard to the individual debts of the partners, for necessaries for themselves respectively, the provision that they might be discharged out of the firm funds, by way of set-off, tends to show that, according to the terms of the original partnership or the understanding between the partners, these too were properly chargeable upon the funds of the firm, at least when contracted with debtors to the firm. Many of the vouchers presented by the defendants as evidence of the firm debts paid by them, show that articles purchased, evidently for the separate use of one or the other partner, were charged to the firm. And the amount paid by Prentice and Johnson, in discharge of accounts containing charges for such articles, goes to make up the amount stated by the Master to have been paid by them in discharge of the firm debts. It may be observed further, that if Prentice and Johnson, pressed as they say they were by the debts of Prentice and Buxton, without being able to collect funds of that firm in time to meet them, discharged any demand against Buxton, individually, otherwise than by way of set-off, the very fact goes to show that they were satisfied that such demand, though appearing against Buxton individually, was really incurred for the firm, and was, therefore, properly chargeable upon the funds of the firm, and payable by them, if there were collectable funds sufficient. For these reasons we are of opinion that such payments, if any were made otherwise than by way of set-off, constituted no ground for demanding re-payment from Buxton, or a deduction from the price agreed to be given for his interest, provided the collectable funds of Prentice and Buxton, in the hands of Prentice and Johnson, were sufficient to meet all such debts, as well as those standing in form against the firm

of Prentice and Buxton. There need, therefore, be no further discrimination with regard to the individual debts of Buxton, existing at the time of the sale, and discharged afterwards by Prentice and Johnson. They go only to make up the aggregate amount of the debts of Prentice and Buxton, paid and payable by Prentice and Johnson, out of the funds of the former firm.

It is true, as charged by the answers, that the books of Prentice and Buxton, of which the latter had the control, were badly kept, and did not show the proper amount, either of debits or credits. But not only does it not appear that there was any fraud intended in this respect; but it is manifest that the purchase was not made with a view to the balance appearing on the books in favor of the firm. There was no statement showing that balance, and it would have been a great labor to ascertain it. Besides, the balance in favor of the firm, after making all corrections authorized by the evidence in this cause, though less than that exhibited by the books as they stood at the time of the sale, greatly exceeds that which the defendants alledge that Buxton then falsely represented to exist, and which, as they say, formed an inducement to the purchase. But obviously, the real object of the purchase and the real consideration of the price given, was the newspaper establishment, with its patronage and its subscription list as it was, paid and unpaid, and the stock, materials, and visible property belonging to it. They did not purchase the debts due to the firm, and although they were to have the surplus which might remain, if any, after discharging its liabilities, there is no guaranty or undertaking on the part of Buxton that there should be any. According to the terms of the contract, he would be entitled to the full price if the debts due to the firm should prove sufficient to discharge its liabilities. And as to the previous transactions of the partners, there being no proof of fraud on the part of Buxton, we concur with the Chancellor in the opinion that the object and effect of this contract, by which Prentice purchased Buxton's interest, was to obviate the necessity of any settlement of their private accounts with the firm, and in fact to merge all question on that head by fixing Buxton's in-

terest above one half, at $1,000, unless it should be re-duced by a deficiency in the funds of the firm to pay its debts. This conclusion, drawn from the face of the transaction, is supported by the proof. We may add that there is neither any proof nor reasonable presumption that Buxton, who seems to have advanced all the capital of the original firm, and to have done all the out of door business, making contracts, receiving, borrowing, and paying money, and supporting the expenses of the estab-lishment, had converted any of its funds to an illegitimate purpose.

Having thus disposed of so much of the case as seems to be independent of the actual comparison of the debts and credits of the firm, and of the receipts and disburse-ments of Buxton, after the sale, we proceed to consider, first the state of the accounts at the time of the sale. It appears then, that at that time there stood upon the books of Prentice and Buxton, exclusive of two sub-scription books hereafter to be noticed, charges in favor of that firm, amounting to $19,024 43

Of this sum, however, it appears that the amount of $2,777 48 consisted of charges for advances to clerks and journeymen, whose services to an equal or greater val-ue, were not credited.

Also, that there were erroneous charg-es, amounting to 501 25

And a statement is presented, pur-porting to be a list of accounts standing on the books, which were ascertained after the sale to be bad and uncollectable, amounting to $4,106 76, which, as it is sup-ported by some general evidence, and is presented in a form which admits of contradiction, will, for the present, be fully admitted, 4,106 76

Amounts carried forward,     $7,385 49   $19,024 43

Amounts brought forward,   $7,315 49  $19,024 43

There is also an account against
  Prentice individually, amounting
  to                         1,168 21

And one against Buxton, of      636 04

And the Master has stated, that there
  are, in addition to those above
  stated, charges, either erroneous
  or settled, amounting to      144 13
                                    ——— $9,333 87

                                      $9,690 56

Conceding that all these charges, amounting to $9,333 87, should be deducted, and there will still remain of accounts charged on the books $9,690 56, of which a large portion has been collected; and as to the residue, there is no sufficient evidence that any portion is either not due, or otherwise not collectable, except as to the sum of $207 50, standing against F. J., which is proved by his deposition to have been paid before the sale—making this further deduction from the accounts on the books, there will still remain $9,483 06 of the debts due to the firm of Prentice and Buxton at the time of the sale, which must be deemed available to meet its liabilities. The largest sum at which those liabilities are stated, including individual debts of the partners, paid by Prentice and Johnson, is $8,861 23, leaving an excess of the available funds of the firm beyond its liabilities of $621 83, more than sufficient to cover any probable errors or omissions, either of the liabilties of the firm or of sums paid for Buxton's individual debts, by Prentice and Johnson, which may not have been included in the statement of the liabilities of the firm of Prentice and Buxton. In coming to this conclusion, we have made every allowance for which, upon the facts appearing in this record, there is any plausible pretext. From the examination we have made of the accounts and vouchers, we are satisfied that if precise accuracy on this branch of the case were necessary, a moderate scrutiny would greatly increase the excess above stated, and we deem it proper to notice one-

item, as to which the Chancellor's opinion has been par-
ticularly excepted to.    In the list of ascertained bad debts,
amounting to over $4,000, the whole of which has been
subtracted in the foregoing statement, from the aggregate
of debts due, is an item of $997, being the amount
charged on the books in 1832 and 1833, against the cen-
tral Clay committee, and said to be uncollectable.    The
true balance against the central committee, as ascertain-
ed by the Master, is $584 56; as to which we concur
with the Chancellor in the opinion, that no sufficient ef-
fort was made to collect it, or to ascertain the person or
persons properly liable for it, and that upon the case as
it stands, it cannot be regarded as an uncollectable debt,
and should therefore, if necessary, be added to the bal-
ance of $621 83 above stated, in favor of the funds of
Prentice and Buxton.    Again, the liabilities of the firm,
as stated above, might be diminished, on the ground,
that as to various items, amounting to a considerable
sum, there are either no vouchers showing that they were
properly chargeable against the firm, or the vouchers
either show or render it probable, that to some extent
at least, they were not chargeable, or that they had been
discharged wholly or in part before the sale. And besides
all this, the Master has drawn from subscription books 1
and 2, not included in the foregoing statement, accounts
in favor of the firm, which he estimates as amounting, at
the time of the sale, to $2,268 13.    If one half of this
sum be thrown off for mistakes and insolvencies, &c.,
there will still remain more than $1,000 to be added to
the excess of funds in the hands of Prentice and Johnson.
But, as without this addition there is an excess more
than sufficient to cover all probable errors and omissions,
we have not thought it necessary to scrutinize this item,
and do not decide to what extent it may be admissible.    It
is sufficient for Buxton, that available debts due the firm
at the time of the sale, were sufficient, with the use of
reasonable diligence, to meet all its liabilities.    And as
Prentice and Johnson have had ample time to collect all
collectable debts, and have had full opportunity for ascer-
taining with reasonable certainty, what accounts on the
books were improperly charged or otherwise uncollecta-

ble ; and as, after making the most liberal allowances on this score which the evidence authorizes, on the principles which we have stated, as applicable to their case, there appears to be in their hands an excess of collectable debts above the liabilities to which said debts were applicable under the agreement of sale, and which they have paid or assumed, either as debts standing against the firm, or as accounts against the individual partners. We feel entirely safe in the conclusion, that they are entitled to no demand against Buxton, and no deduction from the price which they respectively agreed to give for his interest, on account of any comparison of the debts and credits of the firm.

With regard to the receipts and disbursements by Buxton, for the firm of Prentice and Buxton, after the sale, on a comparison of which the Chancellor has found a small balance against Buxton, which he has decreed as a credit on one of Prentice's notes for $500, the case is not free from difficulty. It is sufficiently clear that Buxton paid, in discharge of debts due by the firm, $974, which amount is included in the amount of debts of the firm above stated. It is also clear, from exhibit D, in his hand writing, but without any date, that he received from certain debtors therein named, $290 75, and from a collector $160, making $450 75. But the question is, whether, in addition to this sum, he should be charged with the amount of certain debts of the firm appearing in exhibit E, which, except the signature "G. Hyde," is also in his hand writing, and which bearing date "New Orleans, February 3d, 1834," appears to be a receipt from Buxton of the said debts, (amounting to about $675,) for collection; which debts are included in the statement of the debts, out of which the liabilities of Prentice and Buxton were to be discharged by Prentice and Johnson.

It is alledged in the answers, and may be assumed, that Buxton, being about to visit New Orleans in the winter of 1833–4, received from Prentice and Johnson, accounts, &c. in favor of Prentice and Buxton against persons residing on the lower Mississippi, including those named in both of the exhibits just referred to, and it

A creditor receiving notes &c. of his debtor, to collect, placing them in the hands of an irresponsible agent, will be held to account therefor to his debtor.

seems that he afterwards, at what time or times is uncertain, delivered to them the papers D and E, and also some of the accounts, as being uncollectable, amounting to $90 or $100, say $95. It appears also, that Prentice and Johnson afterwards sent an agent or collector to New Orleans, and that upon dilegent search and inquiry, he could neither find nor hear of G. Hyde, and there is no proof, independently of paper E, that there was such a person, or that if there was, he was such a man as an individual of ordinary discretion would have entrusted with the collection of money in his absence, and at such a distance. That he could not be found or heard of, tends to establish an inference to the contrary, and therefore to throw the responsibility for these debts upon Buxton, who as a creditor of Prentice and Buxton, had received them for collection, and who should be held subject, in that character, to the same strictness which has been shown towards Prentice and Johnson; although, therefore, we think it probable that this receipt of G. Hyde, and the memorandum D, and the uncollectable accounts amounting to $95, were regarded and received as an accounting for the debts placed in Buxton's hands, it cannot be deemed a sufficient and conclusive discharge from his responsibility, when it appears probable that, conceding the receipt signed G. Hyde to be genuine, he was not a person with whom Buxton ought to have left the accounts for collection—and we are of opinion, on this ground, that Buxton was properly chargeable with the whole amount of this receipt, in addition to the amount acknowledged in paper D, unless, as is contended, the $160, stated in paper D to have been received "by a collector," is to be taken as received from Hyde as part of the accounts receipted for by him in paper E. On this subject there is no evidence except that which is furnished by the two papers D and E, the latter of which has no date. But as the receipt of Hyde must be presumed to have been delivered by Buxton to Prentice and Johnson, as evidence of Hyde's liability for the accounts therein mentioned, it must be supposed in fairness, that if Buxton had received any part of those accounts, he would, either by memorandum upon paper E, as would have been most proper and nat-

ural, or by some specific statement in paper D, have shown the fact, and thus have furnished evidence of the diminished responsibility of Hyde. We are, therefore, of opinion that the Chancellor did not err in considering the sum of $160, mentioned in paper D, as not being a part of the debts mentioned in paper E. We may state, as an additional fact, on the question whether Buxton should be charged with the amount of paper E, that the list of accounts therein contained, is below and not above the signature of Hyde. The grounds on which we justify this charge against Buxton, precludes him, in our opinion, from being credited with the allowance of ten per cent. for collection, as stipulated in the paper E. Besides he has been credited by $95 for accounts returned when it is by no means certain that those accounts were included in the list contained in paper E, and he is only charged with the amounts of papers D and E.

We concur, therefore, with the Chancellor, in regard to the small balance found against Buxton on this account, and although Johnson is entitled to one half of that balance, and the whole has been decreed as a credit on the note of Prentice, yet Johnson does not complain, and we think Buxton can neither avail himself of this feature in the decree, nor of Prentice's failure to bring Johnson before the Court on his cross bill, on which the credit is in fact decreed, as a ground of reversal. For although Johnson was not before the Court on that bill, he was upon the original bill, and was a party to the whole settlement of the accounts on which the decree is founded—and in all this matter, and in every question arising on the accounts, his interest was completely identified with that of Prentice; and allegations of his answer in regard to the particular accounts out of which the balance grows, are the same as those in the answer of Prentice, which is made a cross bill. He is certainly bound by the settlement of the accounts as much as Prentice is, and is also, in our opinion, barred by the decree, from even claiming any portion of the balance found against him and decreed to Prentice. A full settlement being the object of all parties, the balance might have been decreed without any cross bill. In approving the opinions and

*[margin note:]* PRENTICE & JOHNSON *vs* BUXTON'S AD'R.

*[margin note:]* Parties to the same suit in Chancery for the settlement of accounts, are bound by a decree on the cross bill of one defendant against the complainant.

decree of the Chancellor on the merits of the case, it should be remarked that a proper consequence of charging the amount of debts listed in paper E, to Buxton, is that his administrator will be entitled to the full benefit of that paper, and of the debts named in it, he will, of course, be entitled to withdraw it upon application, and if Prentice and Johnson, or any one by their authority, have received any part of said debts, they may be liable therefor as for so much received for Buxton's administrator.

As a balance was found and decreed against the complainant, Buxton's administrator, we think he was properly made liable to the ordinary costs. But looking to the nature and results of that part of the controversy which related to the accounts of the firm of Prentice and Buxton, the comparison of its debts and credits, and the ascertainment of its available funds, &c. &c., in which branch of the case the complainant succeeded; and considering that much the largest part of the trouble and difficulty in making the settlement of the accounts, and much the greater portion of the expense arising from the reference to the Master and his report, grew out of this branch of the case, we are af opinion that the cost of the settlement and report by the Master, should not have been decreed wholly against Buxton's administrator, but should have been divided between the parties.

The assignment of errors by Buxton's administrator does not, in our opinion, bring up the question in such a form as to affect the present decree, as to the amount allowed to the Master, or as to the propriety of requiring him to exhibit an account, showing in detail, the grounds and items of his charge. We would remark, however, that the allowance of $456 for the report and examination, and statement of accounts in this case, seems to us to be excessive, and that similar allowances, if general, must prove exceedingly oppressive upon the litigants in the Chancery Court. The compensation to the Master might be liberal, and the Chancellor must have great latitude of discretion on the subject, but that these should bear some proportion between the allowance and the time and labor and skill applied in each case, and some proportion too,

between the allowance made and the remuneration which might be commanded out of the Court by the application of similar skill to similar labors.   To satisfy the parties that they are not subjected to an unnecessary and unjust expense, as well as to enable the Chancellor and this Court to approach, in some reasonable degree, to the proportion which has been indicated, the Master should be required, and especially in case of a voluminous report and extensive accounts, to set forth his charges in detail, stating the number of depositions taken, and as nearly as may be, the time employed, and amount of labor accomplished and the nature of the difficulties encountered, so that some reasonable data might be furnished for comparing the charges with the services performed. Without some such specification, it would be difficult to apply any just rule for fixing the allowance, or to preserve any equality in different cases—and surely it is an unsafe rule to allow, in the lump, whatever is charged in the lump.

Upon the whole case, the decree is affirmed with costs, upon the errors assigned by the appellants—and upon the cross errors of the appellee, except with regard to the costs of the Master's report, it is also affirmed, but so much of the decree as decrees the whole of the allowance to the Master against the appellee, (Buxton's administrator,) is reversed, and the cause, as to that matter, is remanded, with directions to decree only one half of said allowance to be paid by the appellee—and upon the said cross errors, each party is to pay their own costs in this Court.

*Loughborough* for Prentice: *Pirtle* for Buxton.