JUDGE PETBBS
delivered the opinion oe the court.
It is perfectly manifest from the petition that the main purpose of this suit, in its inception, was to compel a compliance on the part of appellant with the alleged contract to take the gold and cotton ventures of the firm to his individual account, and out of his own funds respond to the losses sustained thereby.
It is true that in a short paragraph near the close of his very long petition, devoted to stating a cause of action against appellant for a breach of contract in failing to take to his own account the speculations in gold and cotton and paying the losses incident thereto, appellee does allege that on the dissolution of the firm appellant assumed to be the successor of the house; took possession of all the books, papers, and assets of the firm; retained the office, fixtures, and furniture; had proceeded to collect the debts due the firm to a large amount, exceeding-dollars, for which he had not accounted; and, though possessed of the assets, he had failed to pay debts owing by the firm for stationery and other things necessary for carrying on the business; and concludes with a prayer that appellant be required to produce before the master the books of the firm, to set forth what money he had received belonging to it, and how the same had been appropriated; and that he be compelled to settle the partnership accounts, and to pay io him whatever balance should be found due him on such settlement.
In answer to these charges appellant admitted that after the dissolution of the partnership — which occurred, as De Selding proves,’ about the 1st of June, 1865 — he went to New *422 York after appellee left, went into the office, took charge of the books and property there belonging to the firm, collected some of the debts due the firm, and paid out the amounts collected on debts owing by it, and in addition thereto paid out of his individual means large sums on the debts of the firm, it having, as he alleges, sustained losses to an amount greater than the capital paid into it; says there may be some small accounts against the firm unpaid, and that it owed a note of $2,706.78 given for stock in the Union Insurance-Company; and that said firm had no assets except the stock in said company, and some accounts on insolvent persons wholly worthless; denies that he ever refused to settle; professes a willingness to produce all the firm books before the master, and to have a settlement of the partnership transaction; claims that the firm is largely indebted to him for advancements, and prays judgment against appellee for his part thereof.
In the opinion delivered by the chancellor, he correctly states that upon a dissolution of a partnership one partner is no more bound than another to give his time and labor to winding up the affairs of the firm, unless he has by contract or otherwise assumed the exclusive duty of doing so; and concludes, from a statement made in the pleadings, that appellant by his own showing voluntarily undertook to close the affairs of the firm, and held him to the strictest accountability; citing the case of Prentis, &c. v. Buxton’s adm’r, 3 B. Mon. 35, as an authority therefor.
The substance of the pleadings of both parties has been stated in reference to the question now involved; and while we regard the construction put on the language of the answer by the court very latitudinous and scarcely authorized, yet, considered in connection with Be Selding’s evidence, a witness introduced by appellee, it does seem that instead of appellant having voluntarily assumed the management of the affairs of *423 the firm the force of circumstances impelled him to what he did. This witness says both partners were in Louisville about the first of June, when the dissolution took place. Appellee was in New York about the 1st of May managing and conducting the business of the firm alone, when he was taken sick, and then engaged Mr. H. A. Dumesnil to take charge of the business of the firm, and under advice of his physician departed for Kentucky about the 10th of May. Of this Wilder was notified, and approved the selection of Dumesnil as the agent of the firm. When it was dissolved public notice was given thereof by advertisement, and by the terms of the advertisement Wilder assumed the business, of said firm; but he thinks no new books were opened. About the middle of June, 1865, Wilder returned to New York, settled with and relieved Dumesnil, and within a week or so thereafter caused the books, papers, and property, except office furniture, carpet, and safe, to be packed and sent to his address in Louisville, and placed the lease of the office, together with the office furniture, carpet, and safe, in his hands, to be disposed of by him for the benefit of the parties; and he did dispose of them. He also proved that the books of the firm, after the dissolution, until removed to Kentucky, were in possession first of Dumesnil, as agent or representative of Wilder, and afterward of Mr. Wilder himself, who was but a short time in New York, then returned to Kentucky. Morris was sick for some time after he returned to Kentucky, remained there, and his health continued delicate for a long time. .
Fronrthis statement it appears that appellee was up to the 1st of May the sole manager of the business, and when from failing health he was unable to attend to it, he selected the agent for the firm. Appellant was satisfied with his selection, and Dumesnil remained until they dissolved and his services were no longer needed. Appellant then did what could be done in New York toward winding up the affairs of this *424 dissolved firm, and then returned to Louisville, where he and his late partner resided, having made arrangements to have thq papers and books of the firm sent to the city of the residence of both of them. There was no reason why they should rer main in New York. In Louisville they were convenient to both parties; and there is not an allegation nor an insinuation in the petition that appellee ever applied for the books or papers, or that he could not have gotten them at any time; nor is it alleged that the uncollected débts owing to the firm could have been collected, or that the persons owing them were solvent, or that they were lost by the negligence of appellant.
The facts authorize the conclusion that appellant was induced to go to New York to take charge of the business after appellee had given it up and returned to Kentucky, and that he had the books, papers, etc., sent to Louisville after the firm was dissolved; and there was no reason whatever for leaving them in New York.
If, as is said in the opinion of the chancellor, and which is correctly said, it is as much the business of one partner as another to give his time and attention to winding up the affairs of a firm, unless the one has by contract or otherwise assumed the exclusive duty of doing so, it would be necessary before one partner can be made responsible for all outstanding debts that a direct allegation should be made of a contract by him to that effect, or the charge should be made accompanied by a statement of facts sufficient to constitute such an assumption distinctly, so as to give the party charged an opportunity to traverse the allegations.
In Prentis & Johnson v. Buxton’s adm’r, before referred to, it appears in the opinion that the appellants undertook, by the terms of their contract, to collect the debts due the late firm of Prentis & Buxton, and to keep a faithful account of their collections; and apply, first, so much of such collections *425 as should be required therefor to pay the debts of the old firm, and for that purpose its books, papers, and evidences of debts were taken from Buxton and placed in the possession of the new firm; and this court correctly said that they were bound to use good faith and reasonable diligence in making .disbursements, and in keeping a true account thereof. Here there was no contract. The dissolution of the partnership left each partner in possession of full power to collect and pay debts due to and from the partnership; to apply the effects to the discharge of the debts; to adjust and settle the unliquidated debts of the partnership; to receive any property belonging to it; and to make due acquittances, discharges, receipts, and acknowledgments of their acts in the premises. In such cases one partner can not make the other responsible for mere non-action. (Story on Partnerships, sec. 328.)
It can not be sufficient to charge one partner with the full amount of uncollected debts due the firm at its dissolution that accident has placed the books, papers, and evidence of debts in his possession, and he has neglected to use reasonable diligence in collecting the debts of the partnership, while the other partner remains perfectly passive and indifferent to his own interests. We fail to see a sufficient reason for making appellant responsible personally to appellee for one half of the uncollected debts due the late firm.
Wherefore the judgment is reversed, and the cause is remanded with directions to refer the case to the master, and to charge appellant with the debts of the firm collected by him; with any money and effects of the firm which may have come to his hands; ascertain and report whether appellee was at any time refused access to the books of the firm by appellant, and whether any debts due the firm were lost by the negligence or mismanagement of appellant, and if any were so lost, specify the persons owing such, and the amount thereof; credit him with any debts owing by the firm which he may have paid; *426 settle the accounts; and divide any debts due and unpaid to the firm between the partners; and for further proceedings consistent therewith.